No. 20-56111

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SARA M. KELLEY; TERESA L. SMITH,

*Plaintiffs-Appellants,*

v.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES
AGENCY; JESSICA AYALA; VALERIE HILLS; MARGO FUDGE;
MYRNA MURILLO; ALICIA ROGERS; WENDY CURIEL;
VALESHA BULLOCK; NICK MACCHIONE,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of California
No. 3:19-cv-01404-LAB-DEB
Hon. Larry Alan Burns

## APPELLANT'S OPENING BRIEF

Sara M. Kelley
Attorney and pro se Appellant
9655 Granite Ridge Dr., Ste. 200
San Diego, CA 92123
(858) 717-8040

*Pro Se Attorney for Appellants*
Sara M. Kelley and Teresa L. Smith

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT ........................................................ 3

ISSUES PRESENTED ........................................................................... 4

STATEMENT OF THE CASE ............................................................... 6

SUMMARY OF THE ARGUMENT .................................................... 12

STANDARD OF REVIEW ................................................................. 16

I.      PLAINTIFFS FEDERAL CIVIL RIGHTS CLAIMS AND STATE LAW CLAIMS HAVE NEVER BEEN DECIDED BY ANY COURT ................................................................................. 19

A.      The Rooker-Feldman Doctrine Does Not Apply .............................. 19

B.      28 U.S.C. § 1738 Does Not Apply ..................................................... 19

II.      APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM TO EQUAL PROTECTION AND DUE PROCESS ........................ 20

A.      Discrimination Based on Sexual Orientation is Unconstitutional ...... 20

B.      Conflicting Rights Violate the Ninth Amendment ............................ 22

C.      Cal. Fam. Code § 8602 is Unconstitutional ...................................... 23

D.      The Law Cannot, Directly or Indirectly, Give Private Biases Effect. 29

III.      APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM TO HAVE THE WRITTEN DIRECTIVES DECLARED VOID FOR VAGUENESS ................................................................................. 32

i

IV.    APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM for RETALIATION ................................................................................. 35

V.    APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR JUDICIAL DECEPTION ........................................................... 38

VI.    APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR UNLAWFUL REMOVAL ........................................................ 40

VII.    APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR GOVERNMENT LIABILITY ................................................... 42

VIII.    APPELLANTS REBUTTED IMMUNITY IN THEIR OPPOSITIONS TO DISMISS ........................................................... 44

IX.    THE STATE COURT DECISIONS COULD NOT HAVE VINDICATED THE FEDERAL AND STATES RIGHTS ALLEGED BY APPELLANTS ............................................................................ 46

X.    The District Court Erred in Granting Defendants' Motion for Request for Judicial Notice and Motion to File Documents Under Seal ......... 48

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Oregon State Children's Services Div.*,
    886 P.2d 19, 22-23 (1994) ……………………………………………17

*Bostock v. Clayton Cty.*,
    140 S. Ct. 1731, 1734 (2020) …………………………..………..……18

*Capp v. Cty. of San Diego*,
    940 F.3d 1046, 1056 (9th Cir. 2019)…………………..………. 32,34, 38

*Elliot-Park v. Manglona*,
    592 F.3d 1003, 1009 (9th Cir. 2010) ………………...……………18

*Flores v. Morgan Hill Unified Sch. Dist.,*
    324 F.3d 1130, 1134-35 (9th Cir.2003) …………………..………18

*Griswold v. Connecticut*,
    381 U.S. 479, 484, 85 S. Ct. 1678, 1681 (1965) …………..….……19

*Hardwick v. Cty. of Orange*,
    844 F.3d 1112, 1119 (9th Cir. 2017)..………..……..……..…… 36, 37

*Hunt v. City of L.A.*,
    638 F.3d 703, 710 (9th Cir. 2011) ……..………..…..…..…………..30

*Karam v. City of Burbank*,
    352 F.3d 1188, 1192 (9th Cir. 2003)..……………………………13

*Lozman v. City of Riviera Beach*, Florida,
    138 S.Ct. 1945, 1954 (2018)…… …..……..……..……..……..…… 40

*Mullins v. State of Or.*,
    57 F.3d 789, 792-93 (9th Cir. 1995) ………………..………………17

*Obergefell v. Hodges*,
    135 S. Ct. 2584, 2589 (2015) …………….…..……………20, 21, 23, 25

iii

*Palmore v. Sidoti*, ..………….…..……………..…..…………..…………...………..…27
    466 U.S. 429, 430, 104 S. Ct. 1879, 1881 (1984)

*Pavan v. Smith*,
    137 S. Ct. 2075, 2078 (2017) ………………………...……………20, 23

*Sampson v. Cty. of Los Angeles*,
    974 F.3d 1012, 1022-1023 (9th Cir. Cal. September 9, 2020)
………………………………………………………………17, 33, 34, 37

*Tucson Woman's Clinic v. Eden*, …………………..……....…………30
    379 F.3d 531, 554-55 (9th Cir. 2004)

*Vazquez v. County of Kern*,
    949 F.3d 1153, 1159 (9th Cir. 2020) ……………………………13

## Statutes

28 U.S.C. § 1291 ........................................................................ 2

28 U.S.C. § 1331 ........................................................................ 2

28 U.S.C. § 1343 ........................................................................ 2

28 U.S.C. § 1367(a) .................................................................... 2

28 U.S.C. § 2107(a) .................................................................... 2

28 U.S.C. § 1738 ...................................................................... 16

42 U.S.C. § 1983 ................. 3, 4, 5, 17, 17, 20, 29, 32, 15, 17, 28, 32, 41, 42

Cal. Fam. Code § 8602 ......................................... 4, 9, 19, 20, 21, 23, 24, 26

Cal. Welf. & Inst. Code § 366.26 ................................................ 24

**Rules**

FRCP 12(b)(6) ................................................................. 13

FRCP 26 ........................................................................ 26

**Other Authorities**

Child Welfare Information Gateway, Consent to Adoption (2017),
    https://www.childwelfare.gov/pubPDFs/consent.pdf  (last visited Feb
    16, 2021) ........................................................................ 24

Resource Family Approval Written Directives, VERSION 5 (2018),
https://www.cdss.ca.gov/Portals/9/RFA/Final%20V5%20%202.6.18.pdf
(last visited Feb 16, 2021)……………………………………………..31

**INTRODUCTION**

This appeal is about the constitutional rights of Plaintiffs/Appellants Kelley and Smith, who are foster/resource parents in the County of San Diego. Defendants/Appellees are social workers and other employees who engage in systematic and pervasive retaliation, discrimination, and judicial deception without regard for foster/resource parents' constitutional rights. At the time of Defendants' actions, the law was clear. It was unconstitutional for social workers to retaliate against private citizens for exercising their rights to free speech, lie to the juvenile court, or discriminate against same-sex couples.

Plaintiffs' claims were erroneously dismissed by the district court based on conflicting and specious factual and legal assertions, leaving Defendants to continue to engage, without consequence, in abhorrent behaviors that jeopardize the constitutional rights of volunteer foster/resource parents.

Plaintiffs are a same-sex couple and a resource family licensed/certified by the County of San Diego. In 2017, Defendants placed a child in their home ("Teenager") and they were headed towards adoption until Mar. 2018, when Kelley spoke in the juvenile court. Two days later, the adoption social worker, Defendant Ayala, began retaliating against Kelley by issuing demands that conflicted with court orders and unilaterally decided to put the adoption on hold.

1

On Jun. 17, 2018 (Father's Day), after Teenager told Plaintiffs he wanted a mom and a dad, and less than an hour later, Ayala unlawfully removed him – before serving or filing a notice to remove and with no exigent circumstances – in retaliation for Plaintiffs' refusal to cede to Ayala's unlawful demand that Plaintiffs not speak about "adoption" or "sexual orientation" in their home. Ayala left with Teenager and he never returned home.

Over the course of the next week, Plaintiffs' inquiries about Teenager's location led to Kafkaesque-style interrogations about allegedly inappropriate comments, one of which was for using the word "gay" inappropriately; those allegations were later substantiated (public) despite <u>not</u> being abuse or neglect allegations. Defendants required Kelley to take classes to cure her "deficiency" of using the word "gay" and for other comments that Defendants deemed "inappropriate." Months later, Defendants revealed that Teenager was actually removed on Father's Day because Plaintiffs were allegedly "pushing" gay. Plaintiffs believed initially it was because Teenager wanted a mom and dad, but later discovered it was retaliation set in motion by Ayala two days after Kelley spoke in court in Mar. 2018.

Appellants have remained foster/resource parents in good standing for over two years, but Defendants' retaliation and discrimination continues. Defendants refuse to place any children with Appellants.

2

# JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of California had jurisdiction over Appellants' federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983, as those claims arose under the laws and Constitution of the United States. The District Court had supplemental jurisdiction over the state law and state constitutional claims because those claims are related to the federal claims, arising from the same factual circumstances, events, and transactions under 28 U.S.C. § 1367(a).

This Honorable Court of Appeals enjoys jurisdiction over this Appeal of the final decision and dismissal of Appellants' civil rights and state claims. (*See* 28 U.S.C. § 1291.)

All of Plaintiffs' federal civil rights claims were dismissed with prejudice and without leave to amend by the district court in its Order ruling on the Motion to Dismiss on Sep. 23, 2020. (ER-32) The associated state law claims were dismissed without prejudice, but without leave to amend. (ER-32) The district court entered judgment against Plaintiffs/Appellants on Oct. 5, 2020. (ER-3) Appellants filed timely Notice of Appeal on Oct. 21, 2020, within 30 days from the final order that disposed of all of their claims. (*See* 28 U.S.C. § 2107(a).) (ER-220)

## ISSUES PRESENTED

I.     Whether the district court erred in determining the juvenile dependency court effected Appellants state or federal claims.

    A.  Whether the Rooker-Feldman Doctrine applies to any of Appellants' causes of action.

    B.  Whether 28 U.S.C. § 1738 applies to any of Appellants' causes of action.

II.    Whether the district court erred in dismissing Appellants § 1983 claim to equal protection and due process.

    A.  Whether discrimination based on sexual orientation is constitutional.

    B.  Whether conflicting state and federal rights violate the Ninth Amendment.

    C.  Whether Cal. Fam. Code § 8602 is unconstitutional.

    D.  Whether the placement and/or adoption of foster children can be based on private biases for a protected class.

III.   Whether the district court erred in dismissing Appellants § 1983 claim to declare the Written Directives Void for Vagueness.

IV.    Whether the district court erred in dismissing Appellants § 1983 claim for retaliation.

V.      Whether the district court erred in dismissing Appellants § 1983 claim

        for judicial deception.

VI.     Whether the district court erred in dismissing Appellants § 1983 claim

        for unlawful removal.

VII.    Whether the district court erred in dismissing Appellants § 1983 claim

        for government liability.

VIII.   Whether Appellants rebutted the claims for immunity.

IX.     Whether the juvenile dependency state appeals court effected

        Appellants state or federal claims.

X.      Whether the district court erred in dismissing Appellants state law

        claims.

## STATEMENT OF THE CASE

This case is about federal rights regarding discrimination on the basis of sexual orientation and/or gender, retaliation for the exercise of free speech, unlawful removal of foster children, and associated state rights, and the continuing retaliation and discrimination inflicted on them by Defendants/Appellees. (ER-40-41) Plaintiffs/Appellants Kelley and Smith ("Plaintiffs," "Appellants," "Kelley," "Smith") are a same-sex couple who were in the process of adopting a child ("Teenager") who had been placed in Plaintiffs/Appellants' home by the County of San Diego's Health and Human Services Agency ("Defendants," "Appellees," "Agency," "County").

Defendants' actions violated Plaintiffs' First and Fourteenth Amendment rights, including the rights to equal protection and due process and substantive due process rights (void for vagueness), freedom from retaliation, judicial deception, and the unlawful removal of a child, and government liability under federal law and associated rights under state laws in California, including the Bane Act, misrepresentation, defamation, and infliction of emotional distress. (ER-41)

Appellants arranged the Excerpts of the Record ("ER") in Volume I to allow this Court to read documents in sequence for clarity, beginning with the First Amended Complaint (ER-40-85), then proceeding with the motions and responses, for each of the four motions initiated by the Defendants. (ER-2)

The following pattern repeats for each motion filed by the Defendants: Motion, Opposition to the motion; Reply to that opposition. (ER-86-214)

## **PROCEDURAL HISTORY**

On Jul. 26, 2019, Plaintiffs filed a civil complaint. (ER-225) On Oct. 29, Defendants filed a Motion to Dismiss for Failure to State a Claim and a Motion to File Documents under Seal. (ER-226)

On Nov. 21, 2019, Plaintiffs revised their complaint and filed their First Amended Complaint ("FAC") against Defendants, the County of San Diego's Health and Human Services Agency ("County" or "Agency"), and individual Defendants, Jessica Ayala ("Ayala"), Valerie Hills ("Hills"), Margo Fudge ("Fudge"), Myrna Murillo ("Murillo"), Alicia Rogers ("Rogers"), Wendy Curiel ("Curiel"), Valesha Bullock ("Bullock"), and Nick Macchione ("Macchione") (collectively, "Defendants" or "Appellees"). (ER-226)

Plaintiffs' FAC alleged six federal civil rights claims against Defendants under 42 U.S.C. § 1983: (1) Equal Protection and Due Process; (2) Substantive Due Process – Void for Vagueness; (3) Retaliation; (4) Use of Fabricated Evidence and Judicial Deception; and (5) Unlawful Removal of a Child; and (5) Government Liability. (ER-40-85) The FAC also alleged four state law claims arising from the same facts against Defendants: (1) Violation of Bane Act (California Civil Code §

52.1 "Bane Act"); (2) Misrepresentation; (3) Defamation; and (4) Intentional Infliction of Emotional Distress. (ER-40-85)

On Nov. 22, 2019, the district court accepted the FAC as filed and ordered Defendants previously filed motions as moot. (ER-226)

On Dec. 5, 2019, Defendants filed multiple motions. (ER-226) They filed two different Motions to Dismiss for Failure to State a Claim, splitting the County from the individual Defendants, a Request for Judicial Notice, a Motion to File Documents Under Seal. (ER-226)

On Dec. 30, 2019, Plaintiffs filed separate oppositions, addressing each of the motions. (ER-226-227) On Jan. 6, 2020, Defendants filed their separate replies to each of the oppositions. (ER-227)

On Jan. 8, 2020, the district court took the matter under submission, removed the hearing scheduled for Jan. 13 from the calendar. (ER-227) Less than two months later, the pandemic upended everything and closed businesses and courts; the parties patiently waited over eight months for a decision from the court.

On Sep. 24, 2020, the district court issued its order ("Order") – it granted all of Defendants' motions and dismissed all of Plaintiffs' federal civil rights claims with prejudice and without leave to amend; the state law claims were dismissed without prejudice, effectively leaving Plaintiffs without any possible chance for a remedy as the time to file any claims in state court had expired. (ER-228)

On Oct. 21, 2020, Plaintiffs' filed their appeal to this Court. (ER-228) Appellants appeal the final judgment of the district court, entered on Oct. 5, 2020. (ER-3-4)

## FACTS OF THE CASE

Plaintiffs/Appellants Kelley and Smith are a same-sex married couple, both well-established professionals in the San Diego community, who have been foster/resource parents since 2015. (ER-42) In March 2017, the Agency placed a foster child ("Teenager") in their home, and they were subsequently granted educational rights, de facto parent status, and were prospective adoptive parents after Teenager was freed for adoption. (ER-43) On Mar. 5, 2018, Ayala and the Agency were supportive of Teenager's adoption by Kelley and Smith. Teenager lived in Plaintiffs' home until the social worker, Ayala, removed him to retaliate and discriminate against Plaintiffs. (ER-43-44)

Plaintiffs alleged Teenager was *unlawfully removed* from their care on Jun. 17, 2018, because they would not agree to Ayala's unconstitutional demand that they "suspend" talking about "sexual orientation" and "adoption," and because they are not an opposite-sex couple. (ER-43) When Kelley and Smith did not cede to Ayala's first demand, she increased her demands: find a place for Teenager to stay for the night and I'll take him there. Teenager left with Ayala and never returned home. (ER-43)

Ayala's *retaliation* against Kelley actually began on Mar. 7, 2018, which was two days after Kelley spoke in court about delays in the adoption paperwork. (ER-47) For over a year, Teenager repeatedly asserted that he wanted to be adopted by Kelley and Smith; Ayala stated the adoption was moving forward as of Mar. 5, 2018. (ER-47) Ayala spent the next three months attempting to thwart the adoption and then put the adoption on "hold" at some point for a still-unknown reason, likely because there was not one until Jun. 17, 2018 (Father's Day) when Teenager said he wanted a "mom and dad." (ER-49) Teenager's consent was required for the adoption, but neither he (nor Kelley and Smith) were ever given the opportunity to reach that precipice, all because Ayala set upon a path to prevent Teenager's adoption in retaliation for questioning her delays in court. (ER-49)

First, Ayala retaliated against Kelley for speaking in court by demanding Kelley act directly contrary to a court order entered on Mar. 5, 2018, effecting Plaintiffs' rights. (ER-47) Then, Ayala began threatening and terrorizing Kelley. (ER-47) Next, for months, she misled Plaintiffs and others into believing she was pursuing the adoption of Teenager by Plaintiffs. (ER-48)

Then, on Jun. 17, 2018, Ayala showed up at Plaintiffs' home and demanded Plaintiffs' cede their constitutional rights to free speech. (ER-49-50) To retaliate for not meeting that demand, she unlawfully removed Teenager from Plaintiffs' home. (ER-49-50) When Plaintiffs questioned those actions and asserted their

rights, Ayala retaliated again by filing allegations (not abuse or neglect), which caused Defendants to open an investigation into Plaintiffs. (ER-50-51) When Plaintiffs still remained unwilling to cede their rights in Teenager, Ayala and Hills served Plaintiffs with a Notice of Intent to Remove that they knew at the time contained outright falsehoods. (ER-51) Still unwilling to give up on Teenager, Kelley sent an email on Jun. 22 to Ayala requesting Teenager's return; she stated it was not "appropriate" to return Teenager. (ER-51-52) The same day, Smith sent an email to Macchione requesting a review, but never received a reply. (ER-52)

On Jun. 22, 2018, Defendants unilaterally terminated the placement without a court order or exigent circumstances. (ER-51-52) Plaintiffs believed if they did not object to the removal, Defendants would not substantiate the allegations, which were still unclear to them because all that was alleged was "inappropriate" comments and remarks but did not specify any details in writing. (ER-51-52)

On July 18, 2018, over a month after Teenager was removed – after Teenager spent 23 days in "respite" using Plaintiffs' account ID without their authorization – there was a finally hearing on the removal, but he had already permanently been placed in a new home the week before without a court order. (ER-53)

In Aug. 2018, Murillo provided Plaintiffs with the substantiated (public) allegations for comments she deemed inappropriate, that were neither neglect nor abuse, there were no citations to any rule that was violated. (ER-53-54)

Defendants then required Kelley to take classes to cure her "deficiency" of using the word "gay" inappropriately and for other comments that Defendants deemed "inappropriate."

In Oct. 2018, as part of the internal review process for the *allegations*, Fudge told Plaintiffs that Teenager was removed that day, Jun. 17, because Plaintiffs were "pushing" gay on Teenager; Plaintiffs previously believed he was removed because he wanted a mom and dad, and as part of Ayala's escalating retaliation. (ER-55)

Appellants have remained foster/resource parents in good standing for over two years, but Defendants' retaliation and discrimination continues. Defendants refuse to place any children with Appellants.

## SUMMARY OF THE ARGUMENT

I.   The district court erred in determining the juvenile dependency court actions and the related appeal in state court effected Appellants state or federal claims. Neither the Rooker-Feldman Doctrine nor 28 U.S.C. § 1738 applies to any of Appellants' causes of action. None of

Appellants federal civil rights claims or state law claims have ever been decided by any state or federal court.

II.     The district court erred in dismissing Appellants § 1983 claim to equal protection and due process. Discrimination based on sexual orientation is unconstitutional insofar as it effects any rights for same-sex couples to adopt children. There cannot be a conflict between state and federal rights insofar as a fundamental personal liberty is involved, and those rights have been laid out in *Griswold*, *Obergefell,* and *Paven*. Defendants violated Plaintiffs' constitutional rights to privacy and family planning by dictating topics of discussion in the home.

Cal. Fam. Code § 8602, stating a child over the age of 12 must consent to an adoption, is unconstitutional insofar as it was used to discriminate against Plaintiffs based on their sexual orientation. A child cannot use a protected class as a rational for refusing to be adopted.

Defendants violated Plaintiffs' established federal constitutional rights by using Cal. Fam. Code § 8602 to directly give effect to Teenager's bias in deciding he would get a mom and a dad rather than two moms.

III.   The district court erred in dismissing Appellants § 1983 claim to
       declare the Written Directives Void for Vagueness because they are
       used to violate Plaintiffs constitutional rights to free speech and due
       process. By using the Written Directives to issue allegations against
       foster/resource parents based on broad and vague terms, it invites
       selective enforcement and abuse. Foster/resource parents have no way
       of knowing what comments will be deemed "inappropriate" or how to
       ensure compliance with terms like "comfortable" and "respect" as the
       standards.

IV.    The district court erred in dismissing Appellants § 1983 claim for
       retaliation because there were multiple actions of retaliation by
       Defendants over the course of months, and now years, which
       culminated in many egregious acts, such removing a child from
       Plaintiffs' home and family, and filing defamatory allegations against
       Plaintiffs.

V.     The district court erred in dismissing Appellants § 1983 claim for
       judicial deception because any amount of false evidence or perjury by
       a state actor is harmful. Defendant Ayala filed multiple false
       statements and documents in the juvenile dependency court that

resulted in harm to Plaintiffs reputation before the court and losing rights as de facto parents, and all rights in Teenager.

VI.   The district court erred in dismissing Appellants § 1983 claim for unlawful removal because removals based on discrimination or retaliation violate Plaintiffs' fundamental rights to familial association.

VII.  The district court erred in dismissing Appellants § 1983 claim for government liability because Plaintiffs alleged their actions were part of a pattern and practice and were in retaliation for speech.

VIII. Appellants rebutted the claims for immunity brought by Defendants in their motions to dismiss for both the state law and federal law claims.

IX.   The district court erred in determining that juvenile dependency state appeals court rulings effected Appellants state or federal claims. The juvenile dependency court cannot vindicate civil causes of action for violations of state and federal rights.

X.    The district court erred in dismissing Appellants state law claims because they were valid causes of action and there were multiple federal causes of action that should not have been dismissed, either.

## STANDARD OF REVIEW

The standard is de novo review for "a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), accepting as true all allegations of fact in a well-pleaded complaint and construing those facts in the light most favorable to the plaintiff." *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003). De novo review is the standard for "a district court's decision on qualified immunity." *Vazquez v. County of Kern*, 949 F.3d 1153, 1159 (9th Cir. 2020).

## ARGUMENT

Appellants need to address a serious and concerning issue before moving forward. The district court introduced multiple false statements in its Order, eluding to the statements or events as if they existed in the confidential records filed under seal. The district court stated that Plaintiffs made "suggestions that he was or might be gay;" there were "interactions of sexuality;" Plaintiffs were "distorting his sexuality," "telling him he was gay," and making him "uncomfortable" with their "suggestions" or "discussions of sexuality;" that Plaintiffs had to "take classes to address [this/their] behavior;" and that "encouraging children to consider the possibility that they are gay is not exclusive to same sex couples." (ER-9, 16, 20-22) And, the district court falsely claimed the confidential documents showed that Plaintiffs "upbraided him," and that they were "attempting to inculcate good values" with those statements. (ER-8

Kelley does not know the best way to respond. She has struggled to find cogent arguments in the Order to address and a way to tackle those false and unsettling statements asserted by the district court that do <u>not</u> actually exist in Plaintiffs FAC or the confidential files. (ER-7-9, 16-22) Aside from stating unambiguously that those contentions are <u>not</u> true, it is also noted that "sexuality" is definitively not the same as "sexual orientation" and "gay" is often used colloquially to include an entire spectrum of people in the LGBTQIA+ community. The statement that there were "interactions of sexuality" is obviously defamatory, offensive, and untrue. (ER-9)

Appellants availed themselves of the district court in good faith and will provide this honorable Court with valid legal arguments for the cause of action regarding equal protection and due process, but Kelley has decided she will not further address the arguments made by the district court, because they rely on false statements, in the following pages: (ER-7-9) and (ER-16-22).

Appellants respectfully request this Court, and Appellees in their Reply brief, refrain from using the words "sexuality," "homosexual," "behavior," and "preference" when referring to Plaintiffs' sexual orientation, if it can be avoided. Kelley and Smith identify as "gay" and both Kelley and Smith use she/her/hers as pronouns. The terms "sexual orientation" and "same-sex couple" are ideal for other contexts. Plaintiffs understand there are a lot of terms out there and what may not

seem offensive to one person can be construed as such to another, but "sexuality" is not a synonym for "sexual orientation" or "gay."

Appellants contend the district court entirely misread the FAC and essentially ignored Plaintiffs' oppositions to the four motions filed by Defendants. The district court erred in dismissing all of Plaintiffs' federal causes of action under § 1983. In the FAC, Plaintiffs provided a section of "common allegations" to prevent duplication of information. (ER-45-57) And, at the beginning of each cause of action, it was stated, "Plaintiffs hereby incorporate each and every allegation contained in the foregoing paragraphs as if fully set forth herein." Contrary to the district court's assertion, Plaintiffs provided an abundance of information throughout the FAC and elaborated on the FAC in their oppositions to Defendants' motions regarding their claims. It was improper for the district court to determine and order otherwise.

# I. APPELLANTS' FEDERAL CIVIL RIGHTS CLAIMS AND STATE LAW CLAIMS HAVE NEVER BEEN DECIDED BY ANY COURT

## A. The Rooker-Feldman Doctrine Does Not Apply

The district court was unclear in its Order regarding whether the Rooker-Feldman Doctrine applies in this case. (ER-13-14) Plaintiffs contend that it does not because none of their federal civil rights claims and state law claims have ever been decided by any state or federal court.

The issue was fully briefed in Plaintiffs Opposition to the Motions to Dismiss. (ER-128-130) To the extent that the district court determined Rooker-Feldman does not apply, the court was correct. If there is any ambiguity, this Court should hold that none of their federal civil rights claims and state law claims have ever been decided by any state or federal court.

## B. 28 U.S.C. § 1738 Does Not Apply

The district court, on its own, raised 28 U.S.C. § 1738, but was unclear in its Order regarding whether the statute applies in this case. (ER-13-14) Plaintiffs contend that it does not because none of their federal civil rights claims and state law claims or issues have ever been decided by any state or federal court. It does not matter whether the state appeals court decision for a juvenile dependency case was settled at the time this action was filed.

19

Plaintiffs brought claims under 42 U.S.C. § 1983 and those causes of action can never be decided in a juvenile dependency case or appeal. *Mullins v. State of Or.*, 57 F.3d 789, 792-93 (9th Cir. 1995) citing *Adams v. Oregon State Children's Services Div.*, 886 P.2d 19, 22-23 (1994) (holding that juvenile court has no jurisdiction to consider constitutional claims).

The issue was fully briefed in Plaintiffs Opposition to the Motions to Dismiss. (ER-128-130) To the extent that the district court determined the statute does not apply, the court was correct. If there is any ambiguity, this Court should hold that none of their federal civil rights claims and state law claims have ever been decided by any state or federal court.

## II. APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM TO EQUAL PROTECTION AND DUE PROCESS

### A. Discrimination Based on Sexual Orientation is Unconstitutional

"'To state a claim under 42 U.S.C. § 1983 for a violation of [] the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. (Citation.)'" *Sampson v. Cty. of Los Angeles*, 974 F.3d 1012, 1022-1023 (9th Cir. Cal. September 9, 2020) (internal citations omitted). "[P]laintiffs are members of an identifiable class for equal protection purposes because they allege discrimination on the basis of sexual

20

orientation." *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1134-35 (9th Cir.2003). The Ninth Circuit has repeatedly reaffirmed that "state employees who treat individuals differently on the basis of their sexual orientation violate the constitutional guarantee of equal protection." *Elliot-Park v. Manglona*, 592 F.3d 1003, 1009 (9th Cir. 2010) (citing *Flores,* 324 F.3d at 1137). (ER-133)

In 2020, the Supreme Court, recently held that discrimination based on sexual orientation is discrimination based on sex for employment purposes stating, "It doesn't matter if other factors besides the plaintiff's sex contributed to the decision. And it doesn't matter if the employer treated women as a group the same when compared to men as a group. If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee--put differently, if changing the employee's sex would have yielded a different choice by the employer--a statutory violation has occurred. (*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1734 (2020).)

If any Defendant stopped proceeding with Teenager's adoption (i.e., placed it on hold or removed him from Plaintiffs' home) because Plaintiffs are not an opposite-sex couple, then it was a violation of Plaintiffs' constitutional rights. (ER-131)

**B.     Conflicting Rights Violate the Ninth Amendment**

The Ninth Amendment to the U.S. Constitution states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." (*Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S. Ct. 1678, 1681 (1965).) The Supreme Court stated, "[W]here fundamental personal liberties are involved, they may not be [] abridged by the States simply on a showing that a regulatory statute has some rational relationship to the effectuation of a proper state purpose. "Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling," *(Citation.)* The law must be shown "necessary, and not merely rationally related, to the accomplishment of a permissible state policy." *(Citation.)*" (*Id.* at 1688-89 (internal citations omitted.)

Here, there were two instances where the Defendants interfered with Plaintiffs' constitutional rights. *First*, Ayala's demand Plaintiffs stop talking about "sexual orientation" and "adoption" in the home violated the rights set out in *Griswald* regarding family planning and the right to marital privacy. *Second*, a state law or statute, in this case, Cal. Fam. Code § 8602, cannot supersede the actual enumerated fundamental rights to equal protection and due process based on Plaintiffs' sexual orientation or gender.

## C. Cal. Fam. Code § 8602 is Unconstitutional

Plaintiffs allege the state law, Cal. Fam. Code § 8602, which states, "The consent of a child, if over the age of 12 years, is necessary to the child's adoption," violated Plaintiffs' fundamental rights as a same-sex couple, as detailed in *Obergefell*, in that it prevented Plaintiffs from adopting Teenager. Further, Defendants are liable for using Cal. Fam. Code § 8602 in a way that deprived Plaintiffs of their fundamental rights to equal protection and due process.

Section § 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

Here, to the extent that Teenager's right not to be adopted by Plaintiffs, or even remain in a home with a same-sex couple, based on Cal. Fam. Code § 8602, overrode Plaintiffs' fundamental rights, it was unconstitutional. (*Pavan v. Smith*, 137 S. Ct. 2075, 2078 (2017) (holding that "relevant state laws [are] unconstitutional to the extent they treated same-sex couples differently from opposite-sex couples" by failing to recognize same-sex spouses on children's birth certificates) (internal citations and quotation marks omitted).) *Obergefell v. Hodges*, 135 S. Ct. 2584, 2589 (2015) (holding that granting same-sex couples the

right to marry "safeguards children and families and thus draws meaning from related rights of childrearing, procreation, and education. Without the recognition, stability, and predictability marriage offers, children suffer the stigma of knowing their families are somehow lesser … [and are] relegated to a more difficult and uncertain family life. The marriage laws at issue thus harm and humiliate the children of same-sex couples.") (internal citations and quotation marks omitted). (ER-132)

The Supreme Court stated, "[I]t would be contradictory 'to recognize a right of privacy with respect to other matters of family life and not with respect to the decision to enter the relationship that is the foundation of the family in our society.' (*Citation*.)" (*Id.* at 2599 (internal citations omitted).) Further, " The Court has recognized these connections by describing the varied rights as a unified whole: '[T]he right to 'marry, establish a home and bring up children' is a central part of the liberty protected by the Due Process Clause.' (*Citation*.)" (*Id.* at 2600 (internal citations omitted).)

In the FAC, Plaintiffs provided multiple allegations showing their belief that their fundamental rights to equal protection and due process were violated based on their sexual orientation and or gender. *First*, Teenager told Plaintiffs on Jun. 17, 2018, in response to Kelley's question as to why Ayala had placed the adoption on "hold," was that he wanted a mom and dad. (ER-49)

*Second*, Ayala demanded Plaintiffs not talk about "sexual orientation" or "adoption" and when they would not agree, she demanded Plaintiffs find a place for Teenager to stay that night. (ER-49) *Third*, the questions during Murillo's investigation were not about abuse or neglect, rather about Plaintiffs use of the word "gay" in the home; it has been repeatedly confirmed that the substantiated (public) allegations were never about abuse or neglect. (ER-49) *Fourth*, Ayala informed Kelley by email on Jun. 22 -- five days before the objection to the removal was due -- that it was not "appropriate" to return Teenager to Plaintiffs' home. (ER-51-52)  *Fifth*, Teenager was placed in a home with a mom and a dad, first on Jun. 18 when he entered respite, and then permanently placed in a home on or about Jul. 11 (a week before the juvenile court held a hearing on the removal). (ER-50) *Sixth*, the substantiated (public) allegations state that Kelley's use of the word "gay" in her home was a deficiency. (ER-53-54) *Seventh*, Kelley had to take a class to cure her "gay" deficiency. (ER-55-56) *Eighth*, Fudge told Plaintiffs in Oct. 2018, that the reason for the removal that day, Jun. 17, was because they were "pushing" gay on Teenager. (ER-55) Ninth, after filing their lawsuit, Defendants told the local newspaper that they had not violated any of Plaintiffs' rights because Teenager wanted a mom and a dad. (ER-169)

25

**Legislative History of Cal. Fam. Code § 8602**

Cal. Fam. Code § 8602 is a state statute with little or no legislative history and it predates the fundamental rights the Supreme Court has granted to same-sex couples in *Obergefell* (2015) and clarified in *Paven* (2018).

For public policy reasons, the statute serves no legitimate purpose as it opens the door to discrimination – discrimination that had already been deemed unlawful at the time Defendants utilized it. There is little indication as to why a child over the age of twelve has to consent to an adoption. Plaintiffs know of no other other contractual instances where a contract between two consenting legal parties need a minor's signature.

Consider the situation where a minor had to consent to the purchase of a home, or even the marriage of one of her parents; that would be silly, not to mention unlawful, to try to enforce. But, in instance, that is essence of a statute Defendants invoke as their rationale for discrimination.

And, confoundingly, the sole purpose and policy of a child consenting to an adoption, insofar as it relates to the foster system, can be summed up in a single bullet point found in a brochure titled, "Consent to Adoption," published by the U.S. Department of Health and Human Services, which provides that the state statutes are "designed to ensure protection" for "Children (to prevent unnecessary and traumatic separations from their adult caregivers)."

26

(https://www.childwelfare.gov/pubPDFs/consent.pdf ) If the purpose is to prevent separations, then surely discrimination based on the adoptive parents' sexual orientation is not a valid reason to prevent an adoption.

**Cal. Welf. & Inst. Code § 366.26 Conflicts with Cal. Fam. Code § 8602**

California law specifically states, "The application of any person who, as … foster parent, has cared for a dependent child for whom the court has approved a permanent plan for adoption, or who has been freed for adoption, shall be given preference with respect to that child over all other applications for adoptive placement if the agency making the placement determines that the child has substantial emotional ties to the … foster parent and removal from the relative caretaker or foster parent would be seriously detrimental to the child's emotional well-being…[which]…means that the application shall be processed and, if satisfactory, the family study shall be completed before the processing of the application of any other person for the adoptive placement of the child." (*See* Cal Wel & Inst Code § 366.26 (n).)

Here, Plaintiffs contend they were prospective adoptive parents, and had properly alleged it in their FAC, because they were designated by the court at a hearing in Sep. 2017, Teenager had lived with them for more than six months, they expressed a commitment to adopt Teenager, and had taken steps to facilitate the

adoption process, including receiving de facto parent status and cooperating with all of the Agency's requirements to proceed with the adoption. (ER-46-47)

Plaintiffs described themselves in the FAC using "parental and familial terms" and their rights and responsibilities was because it goes to the rights discussed in *Obergefell*. The Supreme Court was detailing the protected liberty interests to safeguard families for the purposes of childrearing and allowing them to raise children.

It cannot be that Plaintiffs had all the parent-child rights available to them, but since they never adopted Teenager -- because he wanted a mom and a dad -- they never became his legal parents so they had no fundamental rights. That is the type of circular reasoning confronting Plaintiffs at every turn, exactly the scenario that *Obergefell* sought to prevent, and the reason Defendants' actions violated Plaintiffs rights to equal protection and due process.

The Supreme Court purposely conveyed the rights to adoption and birth certificates. *Obergefell v. Hodges*, 576 U.S. 644, 670, 135 S. Ct. 2584, 2601 (2015). It is highly unlikely they meant that same-sex couples have the right to adopt and be placed on a child's birth certificate unless a different state law, the one requiring the child's consent, allows a minor child to choose the sexual orientation or his parents. Plaintiffs were barred from exercising a fundamental

right because of their status as a same-sex couple – a right that was not denied to the opposite couple who adopted Teenager.

But in Plaintiffs' situation, the state juvenile court and even the appeals court reinforced the principle, although they did not cite the law itself. And, then, much to Plaintiffs surprise, it was invoked it as a rational for dismissing every single federal cause of action raised by Plaintiffs in their FAC.

Plaintiffs are caught in a series of "catch-22" debacles. They could not challenge the constitutionality of the statute using the juvenile dependency state court because those courts do not decide constitutional issues. They could not remedy the adoption consent requirement for Teenager because of the existence of Cal. Fam. Code § 8602 and use of it in juvenile dependency court.

Thus, Cal. Fam. Code § 8602 is unconstitutional and should be declared unconstitutional by this Court.

### D. The Law Cannot, Directly or Indirectly, Give Private Biases Effect

Recognizing that this Court may decide to uphold the constitutionality of the Cal. Fam. Code § 8602, although Plaintiffs believe it could negatively-impact their fundamental rights and the rights of others similarly-situated to adopt foster children in the future, Defendants discriminatory actions were already unconstitutional at the time.

In *Palmore*, a minor child was removed because her mother was in an interracial marriage. The "[state] court made no findings with respect to [any] allegations. On the contrary, the court made a finding that "there is no issue as to either party's devotion to the child, adequacy of housing facilities, or respectability of the new spouse of either parent." (*Palmore v. Sidoti*, 466 U.S. 429, 430, 104 S. Ct. 1879, 1881 (1984).) The Supreme Court held, "The Constitution cannot control such prejudices but neither can it tolerate them. [] Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." (*Id.* at 433.)

Here, the similarities between *Palmore* the Plaintiffs' case are remarkable. Same-sex marriage is subject to similar prejudices that existed in the 1980s for people in interracial marriages. As in *Palmore*, the state court record in Plaintiffs' situation clearly reflects that the Agency had determined, as of Mar. 5, 2018, that Teenager had substantial emotional ties to Plaintiffs. Even the appeals' court's ruling states that the juvenile court "did not ascribe fault to anyone for why [Teenager] was removed." (ER-184, 204; *Exhibit E*, p. 6, 10).

Plaintiffs have always maintained that they were not allowed to adopt Teenager because of their sexual orientation, which the state appeals court noted that the Teenager "ultimately revealed that he wanted a 'dad' or male parental figure instead of two female parents." (ER-184, 204; *Exhibit E*, p. 4).   Plaintiffs

could not have overcome the state statute in juvenile court requiring Teenager's consent to the adoption, but the issue was raised and preserved in Kelley's objection, filed on Jun. 27. (ER-184, 204; *Exhibit A*, p. 248)

Thus, when the Agency gave Teenager's biases effect by removing him and giving him to a mom and a dad, regardless of the reason they cite, they are the ones who violated Plaintiffs' fundamental rights to equal protection and due process and should be held liable.

Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## III. APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM TO HAVE THE WRITTEN DIRECTIVES DECLARED VOID FOR VAGUENESS

The facts provided in the Order are incorrect. The Written Directives provide the rules for resource parents; they provide an ancillary guide to Agency's employees so they can hold the resource parents accountable.

Plaintiffs alleged they were investigated for speech in their home and the allegations of inappropriate speech were deemed substantiated, even though they were not allegations of neglect or abuse, and there was no due process, the basis of the allegations are vague in that they are just "general child's rights violations," found in Section 11-08 of the Written Directives (although that was never cited anywhere in the allegations), which includes a lot of enumerated topics, including the actual requirement to talk about sexual orientation and topics involving sex in an age appropriate manner. (ER-62-67)

The district court correctly framed Plaintiffs claim by stating, "the directives are so vague as to give Agency employees almost carte blanche in interpreting them, inviting selective enforcement and abuse." (ER-22)

32

The court noted the "caveat that the rights [Section 16001.9(41)(b)] describes 'are broad expressions of the rights of children in foster care and are not exhaustive of all rights." (ER-24) What could be more vague and *overbroad* than that?

Plaintiffs can "seek damages by raising an as-applied challenge, asserting 'that the law is unconstitutional as applied to his own speech or expressive conduct.'" (*Hunt v. City of L.A.*, 638 F.3d 703, 710 (9th Cir. 2011) (internal citations omitted).)

This Court previously found a code provision unconstitutionally vague because it "require[ed] a licensee to 'ensure that a patient is afforded the following rights, and is informed of these rights: [] To be treated with consideration, respect, and full recognition of the patient's dignity and individuality.'" (*Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554-55 (9th Cir. 2004).) "[U]nderstandings of what 'consideration,' 'respect,' 'dignity,' and 'individuality' mean are widely variable, and they are not medical terms of art. This is especially problematic since the provision requires '*full* recognition' of dignity and individuality. This provision is too vague and subjective for providers to know how they should behave in order to comply, as well as too vague to limit arbitrary enforcement." (*Id. at* 555.)

Here, similarly, Plaintiffs contend that the entire body of Written Directives is unconstitutionally vague and overbroad on its face insofar as there is no generally acceptable meaning of the standards involved, even within the Written Directives and the statutes cited. (ER-62-66) Plaintiffs alternatively contend that the Written Directives are unconstitutionally vague and overbroad as-applied to Plaintiffs.

Plaintiffs have not been able to ascertain where the substantiated allegations that are <u>not</u> abuse or neglect are public because Defendants have so far refused to answer Plaintiffs' questions. Plaintiffs may or may not be listed in the CWS/CMS system; Plaintiffs have no reason to believe they have been listed in the CACI database.

Other phrases in the Written Directives include the requirement to provide a "safe, healthy, and comfortable home where [foster children] are treated with respect," which is obviously subjective. (ER-23)

Appellants request this Court read Version 5 of the Written Directives, effective Feb. 6, 2018.[3] (ER-23) Plaintiffs believe this Court will see how foster/resource parents can get substantiated (public) allegations for violating the Written Directives, without ever committing abuse or neglect.

---

[3] https://www.cdss.ca.gov/Portals/9/RFA/Final%20V5%20%202.6.18.pdf

Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## IV.    APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR RETALIATION

Plaintiffs clearly stated which actions, in the exact order they occurred, were allegedly retaliatory; they never claimed that the "removal was in retaliation for 'filing an appeal to retain de facto parent status and education rights … [and] appealing the substantiated allegations.'" (ER-25) Plaintiffs alleged that with each action they took, there was new or additional retaliatory act by Defendants. (ER-137-138) Filing the appeal in state court and asking for a review of the allegations led to additional retaliation post removal.  (ER-138)

"[T]he mere existence of a legitimate motive, supported though it might be by the FAC, is insufficient [] to mandate dismissal. If [a social worker] would not have made the recommendation absent retaliatory animus, there could still be a viable retaliation claim. *See O'Brien*, 818 F.3d at 936 ("We have previously made it clear that there is a right to be free from retaliation even if a non-retaliatory justification exists for the defendants' action."). (*Capp v. Cty. of San Diego*, 940 F.3d 1046, 1056 (9th Cir. 2019).)

"It was clearly established at the time of Defendants' conduct that the First Amendment prohibits public officials from threatening to remove a child from an individual's custody to chill protected speech out of retaliatory animus for such speech." (*Sampson v. Cty. of Los Angeles*, 974 F.3d 1012, 1020 (9th Cir. Cal. September 9, 2020).)

It is not a "fact", nor is it true, that Teenager was "placed with another couple by court order." (ER-26) Exhibits submitted by Defendants clearly show that is not true and Plaintiffs (and Defendants) know he was placed on or about July 11, a week before the hearing on the removal, which occurred on July 18, 2018. (ER-122-124)

The phrase "much more likely" is based on the court weighing evidence, rather than allowing Plaintiffs even an opportunity to amend their complaint with documents showing that is not true. (ER-26) Allegations of lying to the juvenile court were not "[h]ighly generalized;" Defendants submitted *Exhibit A* to the court, which was pages of specific allegations of Ayala's lies about Plaintiffs. (ER-184, 204)

Kelley being repeatedly berated by Ayala in front of her child, her wife, and two other people on June 5, 2018, is not "utterly commonplace bickering and indignities." (ER-26, 48-49) And, after suffering through that never-ending onslaught of contempt and derision, which Kelley endured for over two hours in

36

the spirit of the CFT "marketplace of ideas," Ayala then filed an "allegation" against Kelley for an allegedly inappropriate comment. (ER-48-49) That is exactly the power imbalance that affords private citizens causes of action for retaliation against state actors.

Plaintiffs know of no authority that supports the district court's position that "Defendants enjoy their own First Amendment rights to speak – which includes the right to criticize and disagree, even harshly and rudely." (ER-27). Even so, that directly conflicts with this Court's holdings in *Capp* and *Sampson*, which were both published opinions before the district court issued its Order.

Even if Plaintiffs had prevailed in the state appeal, the only rights restored would have been de facto and ed rights, neither of which would have resulted in Teenagers return to Plaintiffs home and it is incorrect as a matter of fact and law that the only child that could be placed in their home is Teenager. (ER-27)

More importantly, it was not just a few months that no children have been placed in Plaintiffs home – it was now two-and-a-half years without any placements in their home. Plaintiffs remain in good standing, meaning Defendants could place a child in their home at any time. Yet, Defendants refuse to do so.

The district court stated, "Failing to place new foster children in a household for several months would be unlikely to chill a person of ordinary firmness." (ER-27) That is <u>exactly</u> what chills foster parents from speaking out; it is one of

the cruelest, chilling, and egregious acts of retaliation that a foster parent can endure. (ER-41-42)

The entire analysis of this claim by the District Court is incorrect.

Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## V. APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR JUDICIAL DECEPTION

Defendants knew a significant number of the allegedly false statements provided by Ayala to the juvenile court because Defendants provided Plaintiffs' objections to the district court and it took judicial notice of *Exhibit A*. (ER-184).

The district court repeatedly referenced *Exhibit A* it in its order, even indicating "providing context of private discussions … for which he might be subject to public pressure or ridicule." (ER-6, 9, 20) The Notice to which Plaintiffs were responding was filed with the juvenile court on Jun. 21, 2018, and alleged in the FAC under this cause of action. (ER-27-28, 70)

Plaintiffs cannot just "file documents under seal" without a protective order. If evidence was needed to prove Plaintiffs claims, then it should have allowed them time to get a protective order for all the documents, and given leave to amend the FAC.

Plaintiffs disagree with the contention that the paragraphs they cited are "devoid of any facts." (ER-28) Plaintiffs can prove they alleged facts using the Exhibits presented by Defendants to the district court, which the court judicially noticed. (ER-11-12, 184, 204) Plaintiffs concede that some of the paragraphs in the FAC have both facts and Plaintiffs' own conclusions of the facts.

"[T]here is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible. Why? Because government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts. Furthermore, the social workers' alleged transgressions were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance. There are no circumstances in [] a dependency proceeding that would permit government officials to bear false witness against a parent." (*Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017).)

Plaintiffs were indisputably de facto "parents" at the time Ayala submitted her Notice to the juvenile court on Jun. 21, 2018 under penalty of perjury. Plaintiffs alleged she committed perjury. (ER-70, 131)

The district court claimed, "Plaintiffs have identified no authority, nor is the Court aware of any, for the principal that falsifying evidence is a Constitutional violation even if it has no effect on the outcome of the case." (ER-28). Plaintiffs

identified *Hardwick*, twice. (ER-125, 139) Plaintiffs repeatedly brought multiple instances of falsified evidence to the state court's attention, as soon as they learned of it; Plaintiffs did not have access to documents during the trial in Sep. 2018, and the state appeals court would not consider certain evidence Plaintiffs received for the first time on appeal because it was not a de novo review. (ER-29) There was a back-and-forth between Defendants and Plaintiffs on this very issue in their motions. (ER-95-96, 129-130) Regardless, Plaintiffs brought a claim under § 1983, and the state appeals court decision over terminating *de facto parent status and ed rights* is not binding on the issue of damages in this civil suit. (ER-29)

Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## VI.    APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR UNLAWFUL REMOVAL

The Written Directives have nothing to do with the claim of unlawful removal and Plaintiffs were <u>not</u> given multiple opportunities to contest Teenager's removal <u>before</u> he was removed by Ayala on June 17, 2018. (ER-29-30).

"Sex-based discrimination by state actors that does not serve important governmental objectives and is not substantially related to the achievement of those objectives is unconstitutional." *Sampson v. Cty. of Los Angeles*, 974 F.3d

1012, 1023 (9th Cir. Cal. September 9, 2020). Plaintiffs clearly and repeatedly alleged with factual specificity that removal for discrimination based on Plaintiffs sexual orientation or sex is a violation of their federal rights. (ER-43, 50, 51, 53, 55, 67-69, 71-73)

"[T]he First Amendment prohibits public officials from threatening to remove a child from an individual's custody to chill protected speech out of retaliatory animus for such speech. (*Id.* at 1016.) It "was 'clearly established' as of August 2015, when the events of *Capp* took place." (Id. at 1022.) Plaintiffs clearly and repeatedly alleged with factual specificity that Teenager was removed based on retaliation. (ER-43, 50, 51, 53, 55, 67-69, 71-73)

Plaintiffs were <u>not</u> given multiple opportunities to contest Teenager's removal <u>before</u> he was removed by Ayala on June 17, 2018, without any exigent circumstances; "pushing" gay, whatever that means, is not an exigent circumstance nor is wanting a dad on Father's Day. (ER-43, 50, 51, 53, 55, 67-69, 71-73) Plaintiffs were not given an opportunity to be heard until July 18, 2018, which occurred after June 17, 2018. (ER-43, 50, 51, 53, 55, 67-69, 71-73) The placement, according to the Agency ended on June 22, 2018, which was five days before the objection to the *Notice of Intent <u>to</u> Remove* was even due. Teenager was permanently placed in another foster home on or about July 11, 2018, and he had

spent the 23 days prior to that in respite, fraudulently billed to Plaintiffs account and without their knowledge. (ER-43, 50, 51, 53, 55, 67-69, 71-73)

Plaintiffs clearly stated their claim regarding unlawful removal in their FAC and clarified their claims in their Opposition to the Motion to Dismiss. Namely, that Teenager was removed a month before the hearing for discriminatory and retaliatory reasons.

Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## VII.   APPELLANTS STATED A VALID FEDERAL RIGHTS CLAIM FOR GOVERNMENT LIABILITY

Plaintiffs fully explained how QPI related to government liability and the associated and applicable laws. (ER-170-174) If the long-term policies and customs are so egregious and detrimental to the foster care system that there is an agreement and an initiative to remedy those issues, and yet those policies and practices continue, then that is evidence of government liability for any constitutional violations that arise. QPI was merely one example and the FAC presented an abundance of specific examples of violations of Plaintiffs constitutional rights and why Defendants should be held liable.

Plaintiffs also cited *Lozman*, which is an additional Supreme Court theory of liability, effective Jun. 2018, when retaliation is pursuant to an "official municipal policy" of intimidation. (*Lozman v. City of Riviera Beach*, Florida, 138 S.Ct. 1945, 1954 (2018), citing *Monell*, 436 U. S., at 691.) (ER-68, 172)

Examples of the County's continued retaliation and intimidation of Kelley are discussed in Plaintiffs motions. (ER-138, 173, 210-211) Sending multiple copies of Plaintiffs' complaint to Smith and Kelley's workplaces when they were clearly represented by counsel is retaliatory and intimidating. Then, doubling-down on the retaliation and intimidation, and after a Plaintiffs were interviewed by the local newspaper, the County doxed (i.e., posted identifying information about a person on the internet, typically with malicious intent) Kelley by providing occupational and contact information by posting a link to Kelley's California bar profile in the motion to dismiss, despite her occupation appearing nowhere in the Complaint or FAC. (ER-93) Being a foster parent, and certainly a gay foster parent, can be very dangerous -- now there is no way for Kelley to ever ensure her safety at any address she provides to the CA bar because the link allows for a continuous and current address to always be provided.

Known as the "Lavender Scare," there is long and embarrassing history in this country of the government using similar tactics to terrorize gay people by "outing" them to their employers, subjecting them to interrogations, doxing them,

and making other false and stereotypical accusations, all of which were designed to ruin their reputations because they are gay.

Notably, the retaliation has not stopped, and there have been numerous incidents of retaliation and discrimination against Plaintiffs that continue to this day, including, but not limited to, the County's refusal to place any children in their home for no valid reason.

Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## VIII.  APPELLANTS REBUTTED IMMUNITY IN THEIR OPPOSITIONS TO DISMISS

Plaintiffs were not just making claims "based on rights stemming from Plaintiffs' alleged status as prospective adoptive parents;" it is unclear which rights exactly the district court determined may have been affected by that status. (ER-30-31) It is unjust to read the entire FAC and all the actions and conduct that Plaintiffs alleged against Defendants, especially in light of all of Defendants' conduct after Teenager's removal. (ER-40-85) Plus, it compounds the original injustice to ignore Plaintiffs' elaboration of their case in their Oppositions to Defendants' four Motions. (ER-117-143, 166-175, 193-196, 208-211)

As previously discussed, Teenager's exercise of any rights under state law, or even state actors' constitutional rights to the extent that they had any in the course of their conduct as alleged, cannot eliminate Plaintiffs' fundamental rights; that is illogical and untrue. (ER-30) If it were true, it would undermine the U.S. Constitution and every federal law. It's not pie; constitutional rights for others does not mean fewer rights for Plaintiffs.

Defendants also raised absolute immunity and immunity to state law claims based on state statutes; Plaintiffs properly refuted all claims to all types of immunity in their oppositions to the motions. (ER-125-127, 170-174) Appellants request this Court find that there was sufficient information pled in the FAC to state a cause of action under § 1983 and reverse the district court's order.

## IX.    THE STATE COURT DECISIONS COULD NOT HAVE VINDICATED THE FEDERAL AND STATES RIGHTS ALLEGED BY APPELLANTS

The district court erred in giving an appeal over a juvenile court decision regarding a third-party preclusive effect to Plaintiffs' case. (ER-31) Plaintiffs acknowledge the district court stated that it was not doing that, but that is what occurred. Plaintiffs contend the district court erred in its decision.

First, Plaintiffs are genuinely astonished that Defendants used an unpublished case for a third-party, "In re [Teenager], a Person Coming Under the Juvenile Court Law," in a state court of appeal to convince a federal court that Plaintiffs' had no fundamental rights under federal law and no state law claims.

Nonetheless, it happened. Plaintiffs lost an appeal for a juvenile court case terminating Plaintiffs' de facto parent status and educational rights and then, based on that decision, had all of their claims for violations of constitutional fundamental rights and all the associated state's rights and claims dismissed.

Second, Defendants had to redact portions of their Motion to Dismiss and submit it in a sealed set of documents for the references to the state appeals opinion. (ER-97-98, 106, 203-207) The first time Defendants filed excerpts of Kelley's documents *on Oct. 29* – documents they demanded Kelley provide to them from the appeal, which they already had in their possession (same lead attorney, same office for both cases) – Defendants did not even have an protective order signed by a judge because that did not occur until Oct. 30, 2019. (ER-226 #7, ER-215-218)

Third, Defendants prematurely and unlawfully opened discovery by going to the juvenile dependency court to get Teenager's documents before this case had entered the discovery phase. (ER-193-196) Defendants only submitted only the excerpts they wanted, which do not conflict with any of Plaintiffs contentions in their civil case. (ER-208-211)

Fourth, the district court did not seem to consider what would have occurred if Plaintiffs had prevailed in the appeal in state court regarding de facto parent status and educational rights. It would not have meant Teenager would return to Plaintiffs' home, it would not have provided a remedy to any of their federal or state rights claims.

At the very least, Plaintiffs should have been given an opportunity to amend the FAC before having their entire case dismissed with prejudice. Plaintiffs did not have the "option of seeking leave to file documents under seal," as asserted by the district court. (ER-28) Not all of the documents Plaintiffs needed to prove their allegations are in Teenager's juvenile dependency file. For example, emails between Ayala and Kelley and the allegations showing "gay" as a deficiency are not in Teenager's file, but they still need a protective order for them. Plaintiffs contend that discovery had not been opened and Defendants actions were improper. (*See* Federal Rule of Civil Procedure 26.)

Appellants request this Court find that there was sufficient information pled in the FAC and reverse the district court's order.

## A.     The District Court Erred in Granting Defendants' Motion for Request for Judicial Notice and Motion to File Documents Under Seal

Plaintiffs request this Court review Defendants Motion for Request for Judicial Notice and Motion to File Documents Under Seal, Plaintiffs' oppositions, and Defendants replies de novo. (ER-183-202, 203-214). Plaintiffs contend the district court erred in admitting the documents because it allowed for Defendants to present an incomplete and misleading version of events. (ER-194-196, 208-211)

Appellants are not submitting any of the documents because pro se Appellants are not required to do so and because they are unsure if the protective order covers this appeal, but will reference the Exhibits generally here, knowing Appellees have an obligation to provide the record to this Court.

*Exhibit A* is an <u>excerpt</u> of Kelley's declaration, which leaves out the incorporated attachments, such as the email exchange showing Kelley's challenges to Defendants' actions; Plaintiffs could not have said, "We are under duress and Ayala is lying," any more clearly in those declarations . (ER-204)

*Exhibit B* shows the <u>hearing for the removal</u> occurred on <u>Jul. 18</u>, which was a month <u>after Jun. 17</u>; there is no mention of proper notice. (ER-57, 204)

*Exhibit C*, is the transcript of the hearing on Aug. 27 <u>setting the trial to terminate de facto parent status and ed rights</u>, there is <u>no mention of the removal</u> because it was not at issue -- it had already occurred on Jul. 18; in *Exhibit E*, p. 13, the state court points out the Agency failed to inform them of the change in placement and the Agency conceded the error. (ER-54, 204)

*Exhibit D*, the minute order from the trial on Sep. 6 about <u>terminating de facto parent status and ed rights</u>. (ER-54-55, 204)

*Exhibit E*, the state appeals opinion regarding <u>de facto parent status and ed rights</u>, states on p. 6, that Teenager entered respite on or about Jun. 19 (it was Jun. 18) and *by late June* he was removed (it was Jun. 22), and that by mid-July he was placed with new foster parents (it was on or about Jul. 11). (ER-40, 50, 53, 204) The state appeals court noted Plaintiffs' contention that the removal was about Teenager wanting a dad.

*Exhibit F*, the request to change a court order regarding de facto parent status, dated Aug. 1 (Aug. 1 is <u>after</u> Jul. 18), is misleadingly described as, "regarding the juvenile matter discussed in Plaintiffs' complaint." (ER-204)

*Exhibit G*, the protective order, has an attachment 6 describing why Defendants want the records, which makes it sound as though Plaintiffs just wondered into the juvenile court on Feb. 1, 2019 – 5 months after having de facto parent status terminated – to get some documents before filing a civil suit. Plaintiffs got those records pursuant to a court order from the state appeals court in Dec. 2018 for the <u>appeal over de facto parent status and ed rights</u> and Defendants *knew* that when they went to the juvenile court in Aug. 2019 to get the records for this case; the top of the first page of *Exhibit C* clearly states "District Court of Appeal…" (ER-204, 211).

Plaintiffs have the documents to prove their case; the version of events presented in the FAC is accurate, truthful, and verifiable. It was unjust for the district court to dismiss the case without allowing Plaintiffs an opportunity to present and reference all of the documents proving Defendants' dishonesty. Plaintiffs contend that discovery had not been opened and Defendants actions were improper. (*See* Federal Rule of Civil Procedure 26.)

Appellants request this Court find that there was sufficient information pled in the FAC and reverse the district court's order.

## X.    APPELLANTS STATED VALID STATE LAW CLAIMS

Without any analysis from the district court, it is difficult to rebut any issues or create any new analysis for this Court. Appellants request this Court review all of the state law claims de novo.

Plaintiffs fully explained how each of the state causes of action applied to Defendants' actions in the FAC and each paragraph from the FAC was listed in the Oppositions to Defendants' Motions to Dismiss (ER-117-143, 166-174). Plaintiffs' Oppositions were organized, succinct, and detailed. Plaintiffs are frankly quite dismayed at the entire order; the district court muddled the facts and the law throughout the Order.

By dismissing all federal claims, and not giving Plaintiffs leave to amend, even to submit the evidence that supports all of their claims, the court effectively

prevented Plaintiffs from bringing any cause of action against the Defendants, even in state court. The district court spent over eight months considering the Motion to Dismiss, meaning Plaintiffs could not file a state court action even if they wanted to because the time do so had expired to bring any state law claims.

Appellants request this Court review the state law claims de novo and find there was sufficient information pled in the FAC for their state law claims of Violations of the Bane Act, Misrepresentation, Defamation, and Intentional Infliction of Emotional Distress, and reverse the district court's order.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case remanded for consideration of Plaintiffs' claims on the merits.

Date: Feb. 16, 2021

*s/ Sara M. Kelley*
Sara M. Kelley

*Pro Se Attorney for Appellants Sara M. Kelley and Teresa L. Smith*

I attest that the other party on whose behalf the filing is submitted concur in the filings content.

*s/ Sara M. Kelley*
Sara M. Kelley

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 20-56111

The undersigned attorney or self-represented party states the following:

[ x ]   I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/Sara M. Kelley_ **Date** 2/16/2021

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** <u>20-56111</u>

I am the attorney or self-represented party.

**This brief contains** <u>10,953</u> **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/Sara M. Kelley</u>    **Date** <u>2/16/2021</u>

1